DECISION ON OBJECTIONS TO MAGISTRATE'S DECISION
{¶ 1} Relator, John H. Manning, filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order which denied his application for permanent total disability ("PTD") compensation, and ordering the commission to find that he is entitled to that compensation.
 {¶ 2} Pursuant to Civ. R. 53(C) and Loc. R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate of this court. On October 29, 2004, the magistrate issued a decision including findings of fact and conclusions of law and therein recommended that this court deny relator's request for mandamus. (Attached as Appendix A.) Relator timely filed objections to the magistrate's decision, which objections are now before the court.
 {¶ 3} In his objections, relator asserts there is no evidence in the record to support the staff hearing officer's finding that relator is capable of performing sustained remunerative employment. First, relator contends the commission abused its discretion by relying upon the medical report of Dr. Donald L. Brown, M.D. ("Brown"). Relator contests that Brown's medical opinion was equivocal, as his findings in his medical report were inconsistent with his deposition testimony. Alternatively, relator argues that assuming Brown's medical report was reliable, the commission abused its discretion by failing to adequately address how relator could return to the job market in light of the restrictions suggested by Brown. In support, relator asserts James Houck, ("Houck.") the commission's vocational expert, testified regarding the inconsistencies in Brown's report. We disagree, and concur with the magistrate's finding that Brown's medical opinion was unequivocal. Stateex rel. Eberhardt v. Flxible Corp. (1994), 70 Ohio St.3d 649, 657,640 N.E.2d 815 Additionally, the magistrate correctly noted Houck's opinion regarding the "internal inconsistencies" of Brown's report is irrelevant. (October 29, 2004 Magistrate's Decision at 13.) Ultimately, the commission, not this court, is the exclusive evaluator of the weight and credibility of the evidence. State ex rel. LTV Steel Co. v. Indus.Comm. (2000), 88 Ohio St.3d 284, 287, 725 N.E.2d 639. Accordingly, we agree with the magistrate's finding that Brown's report constituted "some evidence" to support the commission's factual conclusions. Eberhardt,
at 652.
 {¶ 4} Relator also objects to the commission's reliance on Houck's vocational report. Relator argues the commission abused its discretion by denying his motion for an addendum to Houck's vocational report regarding Brown's deposition testimony. He asserts that denial of this motion resulted in the commission's suggestion of employment options outside of the relator's restrictions.
 {¶ 5} Additionally, relator asserts the magistrate erred by finding Houck's vocational report was not rendered equivocal by his subsequent deposition testimony. Relator argues the magistrate did not specifically address the inconsistencies in Houck's deposition testimony. In his deposition, relator asserts Houck could not positively state whether relator could perform the jobs originally listed on his vocational report. As a result, relator asserts that Houck's report was equivocal, and any reliance on his report constitutes an abuse of discretion pursuant to State ex rel. Mitchell v. Robbins Myers, Inc. (1983),6 Ohio St.3d 481, 483, 6 OBR 531, 453 N.E.2d 721.[1]
 {¶ 6} We disagree, and find that the magistrate correctly assessed Houck's report in light of Brown's deposition testimony. Further, based on our review of the record, we concur with the magistrate's finding that Houck's report was not rendered equivocal through his subsequent deposition testimony. Regardless of Houck's opinion of relator's physical capabilities, the commission, as the ultimate evaluator of non-medical vocational factors, was entitled to independently weigh the evidence and reach its own conclusion. State ex rel. Jackson v. Indus. Comm. (1997),79 Ohio St.3d 266, 270, 680 N.E.2d 1233. As such, we find the commission did not abuse its discretion in its reliance on Houck's report, as the report constituted evidence upon which the commission could base its factual conclusions. Mitchell, supra at 483.
 {¶ 7} Finally, relator contends the magistrate improperly determined relator waived his argument regarding his employment options. Relator asserts Houck testified repeatedly in his deposition regarding his reliance on the Dictionary of Occupational Titles ("DOT") in support of his opinion. Relator asserts this testimony was a part of the record and before the staff hearing officer. In the remainder of relator's argument, he reasserts his position that the employment options suggested by the commission are outside of the relator's abilities as stated in the DOT. We disagree. We find the magistrate properly relied upon State exrel. Quarto Mining Co. v. Foreman (1997), 79 Ohio St.3d 78, 679 N.E.2d 706, in finding relator's failure to challenge Houck's suggested employment options during the administrative proceedings precludes our review in mandamus. Further, the magistrate correctly noted the DOT excerpt attached to relator's brief was not contained in the stipulation of evidence, and the record did not reflect this item was submitted as evidence at the administrative level.
 {¶ 8} Upon review of the magistrate's decision, an independent review of the record and due consideration of relator's objections, we find the magistrate has properly determined the pertinent facts and applied the appropriate law. We, therefore, adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. Accordingly, relator's objections to the magistrate's decision are overruled and the requested writ of mandamus is hereby denied.
Objections overruled; writ of mandamus denied.
Petree and French, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT State of Ohio ex rel. John H. Manning, : Relator, : v. : No. 03AP-1287 MVM, Inc. and Industrial : (REGULAR CALENDAR) Commission of Ohio, : Respondents. :
 MAGISTRATE'S DECISION Rendered on October 29, 2004 Butkovich, Schimpf, Schimpf Ginocchio Co., L.P.A., Stephen P. Gast
and Daryl A.W. Crosthwaite, for relator.
Jim Petro, Attorney General, and Paul H. Tonks, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 9} In this original action, relator, John H. Manning, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him permanent total disability ("PTD") compensation and to enter an order granting said compensation.
Findings of Fact:
 {¶ 10} 1. On February 2, 1989, relator sustained an industrial injury while employed as a mechanic with respondent MVM, Inc., a state-fund employer. The industrial claim is allowed for "soft tissue injury left ankle; lumbosacral strain; myofascial irritation; compression of the lower lumbar nerve roots; aggravation of pre-existing degenerative disc disease L5-6, L6-S1; aggravation of pre-existing herniated disc and discogenic changes at L4-5; dysthymia," and is assigned claim number 89-6725.
 {¶ 11} 2. On July 21, 1999, relator filed an application for PTD compensation.
 {¶ 12} 3. On October 15, 1999, relator was examined by commission specialist and orthopedic surgeon, Kenneth R. Hanington, M.D. Dr. Hanington reported:
* * * [H]e should be capable of returning to work in a light duty capacity. He is unable to return to his former position of employment as a chief mechanic, but is capable of other sustained remunerative employment.
 {¶ 13} 4. Also on October 15, 1999, relator was examined by commission specialist and psychiatrist, Donald L. Brown, M.D. Dr. Brown reported:
In my opinion, Mr. Manning has reached MMI with respect to his previously allowed dysthymia and it can be considered permanent. He does need to continue to see Dr. Tangvold and remain on medication plus ongoing supportive therapy. Utilizing the Fourth Edition of the AMA Guides to the Determination of Permanent Impairment, I would rate him in the high range of the Class III level of impairment which corresponds with a high moderate level of impairment. I believe that he's always been an anxious and insecure individual and that he would be able to return to work in an environment that was structured and supportive.
 {¶ 14} 5. On November 10, 1999, relator moved for leave to depose Dr. Brown. Relator claimed there is a substantial disparity between the report of Dr. Brown and the report of Dr. Modrall.
 {¶ 15} 6. On December 14, 1999, a staff hearing officer ("SHO") denied the motion to depose Dr. Brown.
 {¶ 16} 7. The commission requested an employability assessment report from James Houck, a vocational expert. Mr. Houck issued a report on March 27, 2000.
 {¶ 17} 8. Relator moved to depose Mr. Houck and the commission granted the deposition. Mr. Houck's deposition was taken on May 4, 2000. The deposition was recorded and transcribed for the record.
 {¶ 18} 9. Following a July 24, 2000 hearing, an SHO issued an order denying relator's PTD application. The order is based upon the reports of Dr. Hanington, Dr. Brown and Mr. Houck.
 {¶ 19} 10. On October 13, 2000, relator filed in this court a mandamus action which was assigned case No. 00AP-1165. On July 31, 2001, this court issued a writ of mandamus compelling the commission to vacate its order denying the PTD application and its order denying the motion to depose Dr. Brown and to enter an order granting the deposition and to conduct further appropriate proceedings to determine whether or not relator is entitled to PTD compensation following the deposition.
 {¶ 20} 11. On December 3, 2001, relator took Dr. Brown's deposition. During the deposition, the following exchange occurred:
Q. * * * You also indicated that, utilizing the fourth edition of the AMA guides for the determination of permanent impairment, you would rate him in the high range of Class III level of impairment, which corresponds with a high moderate level of impairment.
Isn't it true, Doctor, that an individual with such a Level III impairment, if you were using the AMA guides, that would be basically within the range of, let's say, 25 to 50 percent of an impairment?
A. If you link them — the percentages are actually in the second edition. But, yes, that's the criteria.
Q. He would be on the high end of that, correct?
A. Yes.
Q. More towards the 50 percent; is that correct, Doctor?
A. Yes, closer to that.
* * *
Q. Would it — and again, this may be redundant. But on that same line, Doctor, isn't it also true that an individual with a Class III impairment, those type of impairments, may also have an interruption of a person's activities of daily living or interrupt his activities of daily living?
A. Yes, it can.
* * *
Q. So, in other words, based on that, Doctor, he would have to find a job where the employer would have to accommodate the fact that he doesn't like to deal with the public, correct?
A. Yeah, to a degree. You know, going out in public and dealing with the public are different things. If he's irritable and short, that could be a factor, yes.
Q. So they would also have to accommodate the fact that, you know, like you said, sometimes he is angry or irritable, they would have to, again, try to possibly shelter him from dealing with individuals or put him in low stress situations; is that correct, Doctor?
A. That's correct, low stress.
* * *
Q. Doctor, would you — isn't it correct, Doctor, you would be of the opinion that, based on your opinion at the end of your report, that the claimant needs basically considerable support in order for — with regards to his psychological condition?
A. That would be consistent with what I said.
 {¶ 21} 12. Following a January 31, 2002 hearing, an SHO issued an order denying relator's PTD application. The SHO's order of January 31, 2002 states:
The claimant's oral motion, which was made at hearing, to refer this matter back to the vocational expert, Mr. James Houck, to issue an addendum to his report, based upon the deposition of Dr. Brown which was completed on December 3, 2001 is denied. The Staff Hearing Officer finds that the Industrial Commission is the ultimate arbiter with regard to issues of disability. The Staff Hearing Officer finds that it is appropriate for the Industrial Commission to consider the report of Dr. Houck in light of the addendum by Dr. Brown and conclude whether the claimant is able to engage in sustained remunerative work activity. The Staff Hearing Officer finds that it is not necessary for this matter to be referred back to the vocational expert to issue an addendum to his report.
The claimant was examined at the request of the Industrial Commission by Dr. Hanington on October 15, 1999. Dr. Hanington stated that the claimant's orthopedic conditions had reached maximum medical improvement and prevent the claimant from returning to his former position of employment. Dr. Hanington indicated that the claimant would be able to engage in sedentary and light work activity. Dr. Hanington stated that the allowed orthopedic conditions result in a 5% whole person impairment rating. He stated that the claimant is unable to return to his employment as a chief mechanic but would be able to engage in other sustained remunerative employment activity.
* * *
The claimant was examined at the request of the Industrial Commission by Dr. Donald Brown on October 15, 1999 with regard to the allowed psychological conditions in the claim. * * *
* * *
At the conclusion of Dr. Brown's report, he stated that the claimant had reached maximum medical improvement and that the allowed psychological condition results in a high range of class III level of impairment which corresponds to a high moderate level of impairment. He stated that the claimant would be able to return to work in an environment that was structured and supportive. * * *
* * *
The Staff Hearing Officer finds that the claimant's orthopedic and psychological conditions have reached maximum medical improvement and that the allowed orthopedic condition prevents the claimant from returning to his former position of employment. The Staff Hearing Officer further finds that the claimant would be able to engage in sedentary and light work activity from an orthopedic point of view. The Staff Hearing Officer further finds that the claimant would also need to be in a work environment which was structured and supportive in nature based on the claimant's allowed psychological condition.
A vocational assessment report was completed at the request of the Industrial Commission on January 17, 2000 by Mr. James Houck. Mr. Houck indicated that the claimant's age of 50 classifies the claimant as a person of middle age and would not place limitations on the claimant's employment.
The vocational expert thought the claimant's eleventh grade education may place limits upon the claimant's employment activity but would not preclude all employment. The vocational expert noted that the claimant has an employment history of securing and maintaining employment with his current level of education.
The vocational expert noted that the claimant has employment history consistent with mainly manual labor although he does have one position of employment as a salesman at a parts counter which may be useful in reemployment.
The vocational expert found that the claimant's past work history has involved medium to light skilled employment activities and that the claimant's past work history has involved temperaments such as engaging in repetitive tasks, engaging in a variety of activities, working to precise tolerances and limits and making judgements.
The vocational expert found that the claimant's past adjusted worker trait profile demonstrates that the claimant's reasoning is at the high school level and math and language skills is [sic] at the seventh to eighth grade level. He further stated that the claimant's past work history has demonstrated a general educational development which requires high school level reasoning and seventh to eighth grade level math and language abilities. He further indicated that the claimant has demonstrated by way of past work history mostly average and above average aptitudes.
The claim file contains the May 4, 2000 deposition of Mr. Houck which was taken by claimant's counsel. * * *
* * * At the end of the deposition, Mr. Houck advised that no information had been presented to him which would cause him to render a change in his opinion.
The Staff Hearing Officer finds that the claimant is 52 years of age, and that the claimant has an eleventh grade education. The claimant's past work history has involved onthe-job vocational training as an auto mechanic, as a truck mechanic and a heavy equipment mechanic and parts counter sales person. The Staff Hearing Officer further finds that the claimant is able to read, write, and perform basic math but not well.
The Staff Hearing Officer finds that the claimant's age of 52 would not be a barrier to the claimant engaging in sedentary or light duty employment activity.
The Staff Hearing Officer finds that the claimant's past work history has been heavy in nature and has not provided the claimant with any skills which would be transferable to other employment activity. However, the Staff Hearing Officer finds that based upon [the] report of Mr. Houck and the claimant's performance of skilled employment activity, the claimant possesses the intellectual capacity to learn to perform at least unskilled or semi-skilled employment activities in the future.
The Staff Hearing Officer finds that the claimant's eleventh grade education and ability to read, write and do basic math would not be a barrier to the claimant engaging in entry level, sedentary or light duty employment activity. The Staff Hearing Officer finds that the claimant's eleventh grade education has been sufficient in order for the claimant to learn to perform skilled employment activities in the past. The Staff Hearing Officer further finds that the claimant's eleventh grade education would be sufficient in order for the claimant to engage in entry level, sedentary or light duty employment activity.
The Staff Hearing Officer finds that the claimant last worked in 1989 when he was 39 years of age. The claimant has not engaged in any programs of remediation or rehabilitation which would improve his ability to return to the workforce. The claimant has not attempted to obtain a GED in the last twelve years. In fact, the claimant's application for Permanent Total Disability indicates that the claimant is not interested in rehabilitation services.
The Staff Hearing Officer acknowledges that the claimant must engage in employment which is in a structured and supportive environment due to the claimant's psychological condition. The Staff Hearing Officer finds that such employment is necessary due to the claimant's lack of full emotional reserves to deal with the stresses of the work environment. Such employment would by necessity involve low stress work and limited dealing with the public. The employment must also allow the claimant to take his medication and deal with any side effects of such medication including drowsiness, fatigue and sleepiness. In short, he would have to find a place of employment or a supervisor who is sympathetic to his emotional needs. Although the vocational expert Mr. Houck list[ed] a number of positions which the claimant could perform immediately, or following appropriate academic remediation some of them are not current employment options based upon the addendum [sic] of Dr. Brown. Therefore, based upon the residual functional capacities of Dr. Hanington and Dr. Brown, including the deposition of Dr. Brown, the Staff Hearing Officer finds that the claimant could be employed as a procurement clerk, addresser, and charge account clerk. Following appropriate academic remediation or brief skill training, the claimant could be employed as a dispatcher or typist.
For the above stated reasons, the Staff Hearing Officer finds that the claimant is able to engage in sustained remunerative work activity and is not permanently and totally disabled.
 {¶ 22} 13. On December 31, 2003, relator, John H. Manning, filed this mandamus action.
Conclusions of Law:
 {¶ 23} Relator presents four issues: (1) whether the report of Dr. Brown constitutes some evidence upon which the commission can rely; (2) whether the commission abused its discretion by denying relator's oral motion that the commission obtain an addendum report from Houck regarding Dr. Brown's deposition; (3) whether the commission abused its discretion by finding that relator could be immediately employed as a procurement clerk or charge account clerk, and with appropriate academic remediation or brief skill training, as a dispatcher or typist; and (4) whether the Houck report was rendered equivocal by Houck's deposition.
 {¶ 24} The magistrate finds: (1) Dr. Brown's report does constitute some evidence upon which the commission can rely; (2) the commission did not abuse its discretion by denying relator's oral motion for an addendum report from Houck; (3) relator's failure to raise the third issue during the administrative proceedings compels this court to disregard relator's third issue; and (4) the Houck report was not rendered equivocal by Houck's deposition testimony.
 {¶ 25} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 26} Turning to the first issue, equivocal medical opinions do not constitute evidence. State ex rel. Eberhardt v. Flxible Corp. (1994),70 Ohio St.3d 649. Equivocation occurs when a doctor repudiates an earlier opinion, renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement. Id. Moreover, a doctor's report can be so internally inconsistent that it lacks evidentiary value. State ex rel.Lopez v. Indus. Comm. (1994), 69 Ohio St.3d 445.
 {¶ 27} Relator's argument seems to focus on Dr. Brown's deposition testimony where he indicated agreement with relator's counsel's statement that the claimant needs "considerable support" for his psychological condition. (Relator's brief, 12.) According to relator, the need for considerable support necessarily precludes an ability to return to sustained remunerative employment. Relator's argument lacks merit.
 {¶ 28} The magistrate notes that in the concluding paragraph of his report, Dr. Brown states that relator "does need to continue to see Dr. Tangvold and remain on medication plus ongoing supportive therapy." Apparently, "considerable support" is a reference to that statement in Dr. Brown's report. That statement in the report is clearly consistent with Dr. Brown's conclusion that relator "would be able to return to work in an environment that was structured and supportive."
 {¶ 29} The second issue is whether the commission abused its discretion by denying relator's oral motion for an addendum report from Houck regarding Dr. Brown's deposition testimony.
 {¶ 30} The commission addressed the matter at issue in the following paragraph of the SHO's order of January 31, 2002:
The claimant's oral motion, which was made at hearing, to refer this matter back to the vocational expert, Mr. James Houck, to issue an addendum to his report, based upon the deposition of Dr. Brown which was completed on December 3, 2001 is denied. The Staff Hearing Officer finds that the Industrial Commission is the ultimate arbiter with regard to issues of disability. The Staff Hearing Officer finds that it is appropriate for the Industrial Commission to consider the report of Dr. Houck in light of the addendum by Dr. Brown and conclude whether the claimant is able to engage in sustained remunerative work activity. The Staff Hearing Officer finds that it is not necessary for this matter to be referred back to the vocational expert to issue an addendum to his report.
 {¶ 31} The SHO sufficiently explained why he did not find it necessary to seek an addendum report from Houck.
 {¶ 32} The commission is the expert on the vocational issues in a PTD adjudication. State ex rel. Jackson v. Indus. Comm. (1997),79 Ohio St.3d 266, 271. Accordingly, it was within the hearing officer's discretion to read the Houck report in light of Dr. Brown's deposition testimony without further assistance from Mr. Houck.
 {¶ 33} The third issue is whether the commission abused its discretion by finding that relator could be immediately employed as a procurement clerk or charge account clerk and, with appropriate academic remediation or brief skill training, a dispatcher or typist. Relator attached to his brief as exhibit B an item from the Dictionary of Occupational Titles ("DOT") that presents a description of the duties of a "procurement clerk." The magistrate notes that this purported DOT item is not contained in the stipulation of evidence, and there is no evidence before this court that the item was ever submitted or referenced by relator at the administrative proceedings at issue.
 {¶ 34} According to relator, exhibit B indicates that the procurement clerk job requires "clerical perception" at USDOL level 2; whereas, Houck determined that relator's clerical perception was at level 3. According to relator, because Houck determined that his clerical perception was at level 3, the commission cannot find that relator can perform the job of procurement clerk.
 {¶ 35} Relator presents similar challenges to the commission's findings that relator can perform the jobs of charge account clerk, dispatcher or typist. However, relator presents here no challenge to the commission's finding that relator can perform the job of "addresser."
 {¶ 36} Relator failed to administratively challenge Houck's employment options. Relator could have confronted Houck with these challenges during Houck's deposition but failed to do so. Also, relator could have requested a vocational analysis from his own expert to challenge Houck's employment options but failed to do so. Now, in this action, relator inappropriately invites this court to, in effect, second-guess the commission's expert using sources outside the record. Issues not raised administratively are ordinarily not reviewable in mandamus. State exrel. Quarto Mining Co. v. Foreman (1997), 79 Ohio St.3d 78. Thus, relator is precluded from raising his third issue here.
 {¶ 37} The fourth issue is whether the Houck report was rendered equivocal by Houck's subsequent deposition.
 {¶ 38} During his deposition testimony, Houck indicated that he feels it is inconsistent for Dr. Brown to place relator in the "Class III" level of impairment and to conclude that relator is employable. (Tr. 58-60.) He then states "I don't want to say inconsistent. I don't have an expertise in the Level 3." (Tr. 60.)
 {¶ 39} Notwithstanding Houck's concern about the internal consistency of Dr. Brown's report, Houck testified that he treated Dr. Brown's report as indicating that relator was employable "in an environment that was structured and supportive."
 {¶ 40} Contrary to relator's claim, Houck's report is not rendered equivocal because of Houck's concern regarding the internal consistency of Dr. Brown's report. As Houck himself indicates in his deposition testimony, he has no medical expertise. Houck's opinion regarding the internal consistency of Dr. Brown's report is irrelevant. Moreover, relator fails in this action to successfully challenge the evidentiary value of Dr. Brown's report.
 {¶ 41} Houck properly read Dr. Brown's conclusion that the dysthymia did not render relator unemployable. Houck then performed a vocational review based upon Dr. Brown's medical opinion. Thus, contrary to relator's claim here, the Houch report was not rendered equivocal by Houck's deposition testimony.
 {¶ 42} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
 /s/ Kenneth W. Macke KENNETH W. MACKE, Magistrate.
[1] Relator does not further address Mitchell, in which the Supreme Court of Ohio held, "[w]here there is no evidence upon which a commission could have based its factual conclusion an abuse of discretion is present and mandamus becomes appropriate." Mitchell, at 483 quoting State exrel. Kramer v. Indus. Comm. (1979), 59 Ohio St.2d 39, 42, 13 O.O.3d 30,391 N.E. 2d 1015.