DECISION ON OBJECTION TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Jeffrey A. Parrish, has filed an original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying him permanent total disability ("PTD") compensation and to enter an order granting said compensation.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law, recommending that this court deny relator's request for a writ of mandamus. (Attached as Appendix A.) Relator has filed an objection to the magistrate's decision.
 {¶ 3} In his objection, relator argues that, in light of restrictions set forth in the October 2003 report of Dr. Ron Koppenhoefer, there is no evidence in the record to support the staff hearing officer's finding that relator was capable of performing the jobs of sorter, stuffer, packer, inspector and assembler. Relator maintains that all of the above-cited jobs require repetitive movement of the hands and/or wrists, and, therefore, fall outside of what he is physically capable of performing based on the physician's restrictions.
 {¶ 4} In addressing this contention, the magistrate noted that relator had attached to his brief, as an exhibit, several pages from the Dictionary of Occupational Titles ("DOT"). The magistrate further noted that the DOT pages were not contained in the stipulation of evidence, nor was there evidence that relator ever submitted these materials during the administrative proceedings. The magistrate thus found that relator failed to administratively challenge the employment options, and that he was inappropriately seeking to second-guess the commission's expert using sources outside the record. The magistrate relied in part upon this court's recent decision in State ex rel. Manning v. MVM, Inc., Franklin App. No. 03AP-1287, 2005-Ohio-290, at ¶ 7, in which a DOT excerpt attached to relator's brief "was not contained in the stipulation of evidence, and the record did not reflect this item was submitted as evidence at the administrative level." In Manning, we held that the magistrate properly found relator's failure to challenge the vocational assessment listing job options during administrative proceedings precluded this court's review in mandamus.
 {¶ 5} In the instant case, even assuming that we were to find relator did not waive this issue, we would still conclude that there was some evidence to support the commission's decision. Specifically, the commission could have reasonably concluded that some of the jobs listed, i.e., inspector or surveillance system monitor, do not require repetitive use of the hands and/or wrists, and, therefore, relator has not shown that such jobs would necessitate activities beyond the scope of the restrictions set forth in the physician's report. We further note that the commission is "generally not required to enumerate the jobs of which it believes claimant to be capable." State ex rel. Mann v. Indus. Comm.
(1998), 80 Ohio St.3d 656, 659.
 {¶ 6} Based upon an examination of the magistrate's decision and an independent review of the record, pursuant to Civ.R. 53, we overrule relator's objection and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law. In accordance with the magistrate's recommendation, we deny the requested writ of mandamus.
Objection overruled; writ of mandamus denied.
French and McGrath, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. :
Jeffrey A. Parrish, :
 Relator, :
v. : No. 04AP-661
Walter Randolph Carl Fritschi : (REGULAR CALENDAR)
and Industrial Commission of Ohio, :
Respondents. :
 MAGISTRATE'S DECISION Rendered on March 15, 2005 Butkovich, Schimpf, Schimpf Ginocchio Co., L.P.A., Stephen P. Gast
and Daryl A.W. Crosthwaite, for relator.
Jim Petro, Attorney General, and Andrew J. Alatis, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 7} In this original action, relator, Jeffrey A. Parrish, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him permanent total disability ("PTD") compensation and to enter an order granting said compensation.
Findings of Fact:
 {¶ 8} 1. On October 13, 1989, relator sustained an industrial injury while employed as an iron worker. On that date, relator fell from a bridge. His industrial claim, assigned claim No. 89-36899, is allowed for:
Fracture right wrist; below knee amputation left leg; injured elbow; fractured spine; laceration head; osteoarthritis of the right wrist; fibular overgrowth of left below the knee amputation; major depressive disorder; right carpal tunnel syndrome; right median nerve lesion; right ulnar nerve lesion.
(Emphasis omitted.)
 {¶ 9} 2. On August 19, 2003, relator filed an application for PTD compensation. In support, relator filed a report, dated August 4, 2003, from Jeffrey L. Stambough, M.D. The report is in the form of a letter addressed to attorney Robert Welch. The report states:
Jeff has been continuing to have ongoing problems predominately with his right wrist. As previously as has been documented, he has a left below the knee amputation. This was traumatic and he requires intermittent changes in his prosthetic with its associated attachments and liners.
Over the time I have been following him; his weight is increased. He continued to some and has developed COPD. He also has been developing more back pain as a consequence of his walking and gait. There may be other factors involved including his smoking.
His primary reason for continuing to follow with me is his right wrist. His fracture has resulted in post-traumatic arthritis, especially with disruption of the distal radial ulnar joint. Specialized studies have documented this and he has undergone a reconstructive procedure in 1989. This is a Sauvé-Kapandji procedure in which there was a resection arthroplasty of the distal ulna and a fusion of the distal radial ulnar joint. This has improved his pain and [sic] but resulted in permanent loss of motion and strength.
Because of his 9th grade education and his multiple medical issues, I feel that it is likely that he will be totally and permanently disabled. This is in my opinion, a high probability.
Otherwise, he continues on pain management. He is unable to find any type of gainful employment with his multiple issues and his lack of formal education.
 {¶ 10} 3. On October 31, 2003, relator was examined at the commission's request by Ron M. Koppenhoefer, M.D., who specializes in physical medicine and rehabilitation. The first paragraph of Dr. Koppenhoefer's narrative report states:
Purpose of Exam: To determine if the claimant has reached maximum medical improvement with regard to each specified allowed condition; provide the estimated percentage of whole person impairment arising from each allowed condition based on AMA Guides, 4th edition; complete the Physical Strength Rating form.
 {¶ 11} 4. In his narrative report, Dr. Koppenhoefer concludes:
When taking into effect the allowed conditions in this claim, I believe he is capable of doing sedentary work activities. His limitations in sedentary work would be in regards to repetitive movement of the right wrist and repetitive gripping and grasping activities.
 {¶ 12} 5. Dr. Koppenhoefer also completed a physical strength rating form on which he indicated relator is capable of "sedentary work."
 {¶ 13} 6. Relator's counsel requested that William T. Cody prepare a vocational assessment. On October 23, 2003, Mr. Cody issued a report, in which he opined:
* * * [I]n the opinion of this vocational expert, Jeffery Parrish is permanently and totally occupationally disabled. That is, there are no jobs in the local or national economies that he is able to perform. This conclusion was reached considering his limited education, extremely low academic ability, manual trade work history, and the physical and psychological limitations that he has as a result of his recognized conditions.
 {¶ 14} 7. The commission requested an employability assessment report from Samuel H. Osipow, Ph.D., a vocational expert. Dr. Osipow's report, dated December 5, 2003, responds to the following query:
Based on your separate consideration of reviewed medical and psychological opinions regarding functional limitations which arise from the allowed condition(s), identify occupations which the claimant may reasonable be expected to perform (A) immediately after and/or (B) following appropriate academic remediation or brief skill training.
 {¶ 15} Indicating acceptance of Dr. Koppenhoefer's report, and responding to the above query, Dr. Osipow lists the following employment options: "sorter; stuffer; packer; inspector; assembler; surveillance system monitor."
 {¶ 16} Indicating acceptance of Donald J. Tosi, Ph.D.'s report, and responding to the above query, Dr. Osipow lists the same employment options that he listed for Dr. Koppenhoefer's report.
 {¶ 17} Under "III Effects of other employability factors," Dr. Osipow's report states:
[One] Question: How, if at all, do the claimant's age, education, work history or other factors (physical, psychological, and sociological) effect his/her ability to meet basic demands of entry level occupations?
Answer:
Age: As a younger person he should be able to meet the basic demands of entry level occupations.
Education: He completed only 9 years of school, has no GED and though he can read, write, and do basic math, he is not able to do so well. Thus, his educational level would suggest he has some problems in meeting the basic demands of entry level occupations.
Work history: His work history, which includes jobs at the middle range of semi-skilled and skilled levels, suggests that he should be able to meet the basic demands of entry level occupations.
Other: He uses a brace for his right wrist.
[Two] Question: Does your review of background data indicate whether the claimant may reasonably develop academic skills or other skills required to perform entry level sedentary or light jobs?
Given his low level of education and his limitations in reading, writing, and doing basic math, he is likely to have some difficulty in developing the academic or other skills required to perform entry level sedentary or light jobs.
Under "IV Employability assessment database," Dr. Osipow's report states:
B. Work history
 Job title * * * skill level strength level dates
 loader * * * semi-skilled light 2001
 (SVP 4)
 welder * * * semi-skilled heavy 94-96; 97
 (SVP 5) 98-00
 iron worker * * * skilled heavy 1989
 (SVP 7)

C. Educational History
 Highest grade completed: 9th
 Date of last attendance: 1980
 HS graduate: no
 GED?: no
 Vocational Training: none
 ICO Educational Classification: limited education
 {¶ 18} 8. Following a March 18, 2004 hearing, a staff hearing officer ("SHO") issued an order denying the PTD application. The SHO's order states:
The injured worker was examined by Dr. Koppenhoefer at the request of the Industrial Commission with respect to the allowed orthopedic conditions in the claim. Dr. Koppenhoefer opined that the injured worker has reached maximum medical improvement considering the allowed conditions and has a resulting 39% whole body permanent impairment. Considering the allowed conditions in the claim, Dr. Koppenhoefer opined that the injured worker would be capable of performing sedentary employment. Dr. Koppenhoefer provided the additional limitation to sedentary work that the injured worker limit repetitive movement of the right wrist and repetitive griping and grasping activities with the right hand. Dr. Koppenhoefer completed a physical strength rating form which he attached to his medical report wherein he indicated that the injured worker is capable of such physical work activity. Sedentary work is defined on that form as meaning the ability to exert up to ten pounds of force occasionally and a negligible amount of force frequently. It further involves in sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are considered sedentary if walking and standing are required only occasionally and all other sedentary criteria are met. The injured worker's attorney objected to the medical report of Dr. Koppenhoefer based on his indication on the face of his report that he was examining the injured worker to determine if he had reached maximum medical improvement, to provide an estimated percentage of whole person impairment arising from each allowed condition, and to complete a physical strength rating form. The injured worker's attorney argued that Dr. Koppenhoefer did not understand that the purpose of the examination was on the pending issue of permanent and total disability compensation. The Staff Hearing Officer rejects the injured worker's attorney's argument and finds that Dr. Koppenhoefer in fact reviewed the documents associated with the application for permanent and total disability compensation as stated in his medical report. Specifically, Dr. Koppenhoefer reviewed the worksheet and statement of facts, Dr. Stambough's medical report dated August 5, 2003, which was used to support the application for permanent and total disability compensation, various surgery and medical treatment notes and the "entire chart of claim number 893-6899".
The injured worker was evaluated by Dr. Tosi at the request of the Industrial Commission with respect to the allowed psychological condition in the claim. Dr. Tosi opined that the injured worker has reached maximum medical improvement considering the allowed psychological condition and has a resulting 20% whole person permanent impairment. Dr. Tosi opined that the allowed psychological condition would not prevent the injured worker from returning to his former position of employment. Dr. Tosi completed an occupational activity assessment form which he attached to his medical report wherein he indicated that the allowed psychological condition would not prevent the injured worker from returning to any former position of employment or any other form of sustained remunerative employment.
The Staff Hearing Officer finds that the injured worker is capable of performing sedentary employment based on the opinion of Dr. Koppenhoefer and in accordance with the limitations set forth by Dr. Koppenhoefer in the medi[c]al report dated October 31, 2003 and the definition of sedentary work on the physical strength rating form attached to his report. The Staff Hearing Officer further finds that the allowed psychological condition does not prevent the injured worker from performing any employment that he is otherwise qualified to perform and presents him with no limitations which would impact on his employability.
An employability assessment of the injured worker was performed by Dr. Osipow at the request of the Industrial Commission. Dr. Osipow opined that considering the residual functioning capacities as expressed by Dr. Koppenhoefer and Dr. Tosi, the injured worker has the following employment options: sorter, stuffer, packer, inspector, assembler, and surveillance system monitor. Dr. Osipow noted the injured worker['s] age of 39 and stated that he is categorized as a younger person. Dr. Osipow opined that the injured worker would be capable of meeting the basic demands of entry level occupations considering his younger age. He further noted that the injured worker has a ninth grade formal education and reported on his application that he is unable to read, write, and do basic mathematics well. Dr. Osipow opined that this educational level would present some problems to the injured worker in meeting the demands of entry level occupations. He further reviewed the injured worker's work history which included jobs classified as semi-skilled and skilled. Dr. Osipow opined that such employment history suggests that the injured worker would be able to meet the basic demands of entry level occupations. Dr. Osipow did not have an opportunity to review the vocational report submitted by the injured worker for the reason that the report prepared by Mr. Cody was filed subsequent to the review performed by Dr. Osipow.
The Staff Hearing Officer finds that the injured worker is 39 years old, has a ninth grade education, and work experience as a mechanic, welder, iron worker, and laborer. The Staff Hearing Officer finds that the injured worker's age is an asset which would enable him to adapt to new work rules, processes, methods, procedures and tools involved in a new occupation. The Staff Hearing Officer further finds that the injured worker's education is a limitation which would prevent him from performing occupations involving clerical duties. The Staff Hearing Officer further finds that the injured worker's work history demonstrates his ability to perform semi-skilled and skilled occupations and is indicative of his ability to perform entry level occupations with primarily on-the-job training. Considering the injured worker's ability to perform sedentary employment in conjunction with his age, education and work experience, the Staff Hearing Officer finds that the injured worker would be capable of performing the occupations identified in the vocational report of Dr. Osipow, such as: sorter, stuffer, packer, inspector, assembler, and surveillance system monitor. Accordingly, the injured worker's application for permanent and total disability compensation is denied.
This order is based on the medical reports of Dr. Koppenhoefer, Dr. Tosi and the vocational report of Dr. Osipow.
 {¶ 19} 9. On July 1, 2004, relator, Jeffrey A. Parrish, filed this mandamus action.
Conclusions of Law:
 {¶ 20} Relator presents three issues: (1) whether Dr. Osipow's listing of employment options corresponding to Dr. Koppenhoefer's report is some evidence upon which the commission can rely; (2) whether the commission abused its discretion by finding that relator's work history is "indicative of his ability to perform entry level occupations with primarily on-the-job training"; and (3) whether Dr. Koppenhoefer's report is some evidence upon which the commission can rely.
 {¶ 21} The magistrate finds: (1) relator's failure to raise the first issue during the administrative proceedings compels this court to disregard this issue; (2) the commission did not abuse its discretion by finding that relator's work history is "indicative of his ability to perform entry level occupations with primarily on-the-job training"; and (3) Dr. Koppenhoefer's report is some evidence upon which the commission can rely. Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 22} With respect to the first issue regarding Dr. Osipow's employment options, relator attached to his brief as exhibit A several pages taken from the Dictionary of Occupational Titles ("DOT"). The magistrate notes that the DOT pages are not contained in the stipulation of evidence and there is no evidence before this court that the DOT pages were ever submitted or referenced by relator at the administrative proceedings.
 {¶ 23} According to relator, exhibit A indicates that the jobs of sorter, stuffer, packer, inspector, and assembler (which Dr. Osipow lists as employment options) "all require repetitive use and/or grasping with the hands or wrists." (Relator's brief, at 10.) Relator then argues:
* * * No where in the order does the Staff Hearing [O]fficer explain the apparent inconsistency in adopting Dr. Koppenhoefer's restrictions, while at the adopting Dr. Osipaw's [sic] occupations and listing occupations which require repetitive use of the right hand and wrist. * * *
Id.
 {¶ 24} While relator's argument is presented as an alleged failure of the SHO to explain what relator calls an "apparent inconsistency," the argument is, in effect, an evidentiary challenge to Dr. Osipow's report by using sources outside the record.
 {¶ 25} Relator failed to administratively challenge Dr. Osipow's employment options. Relator could have sought Dr. Osipow's deposition or requested a report from his own expert that challenged Dr. Osipow's employment options. Relator did neither.
 {¶ 26} Now, in this action, relator inappropriately invites this court to, in effect, second-guess the commission's expert using sources outside the record. Issues not raised administratively are ordinarily not reviewable in mandamus. State ex rel. Quarto Mining Co. v. Foreman
(1997), 79 Ohio St.3d 78. Thus, relator is barred from raising the first issue here.
 {¶ 27} In fact, relator's attempt to use the DOT to challenge Dr. Osipow's employment options is similar to another recent case in which this court refused to permit a relator to use the DOT to challenge the commission's employability assessment report. State ex rel. Manning v.MVM, Inc., Franklin App. No. 03AP-1287, 2005-Ohio-290.
 {¶ 28} For the second issue, relator challenges the following commission finding:
* * * The Staff Hearing Officer further finds that the injured worker's work history demonstrates his ability to perform semi-skilled and skilled occupations and is indicative of his ability to perform entry level occupations with primarily on-the-job training. * * *
 {¶ 29} Relator argues that the above-quoted finding is not supported by Dr. Osipow's report. According to relator:
* * * In his report. Dr. Osipaw [sic] specifically found that based on the Relator's background, the Relator would have difficulty developing academic or other skills required to perform entry level sedentary or light jobs.
(Relator's brief, at 11.)
 {¶ 30} However, Dr. Osipow's report states:
Education: He completed only 9 years of school, has no GED and though he can read, write, and do basic math, he is not able to do so well. Thus, his educational level would suggest he has some problems in meeting the basic demands of entry level occupations.
Work history: His work history, which includes jobs at the middle range of semi-skilled and skilled levels, suggests that he should be able to meet the basic demands of entry level occupations.
 {¶ 31} Thus, Dr. Osipow's report indicates that relator's educational level suggests problems in meeting basic demands of an entry level occupation while his work history indicates the opposite.
 {¶ 32} The commission, through its SHO, chose to give more weight to relator's work history in determining that relator has the "ability to perform entry level occupations with primarily on-the-job training." It was well within the commission's fact-finding discretion to do so.
 {¶ 33} Moreover, Dr. Osipow himself seems to have given the greater weight to relator's work history since he found that relator was medically and vocationally able to work based upon Dr. Koppenhoefer's report.
 {¶ 34} In short, the second issue presented by relator here lacks merit.
 {¶ 35} The third issue is whether Dr. Koppenhoefer's report is some evidence upon which the commission can rely in determining whether relator is permanently and totally disabled. The focus of relator's challenge to Dr. Koppenhoefer's report is on the first paragraph which states:
Purpose of Exam: To determine if the claimant has reached maximum medical improvement with regard to each specified allowed condition; provide the estimated percentage of whole person impairment arising from each allowed condition based on AMA Guides, 4th edition; complete the Physical Strength Rating form.
 {¶ 36} According to relator, the above-quoted paragraph of Dr. Koppenhoefer's report indicates that Dr. Koppenhoefer did not intend that his report be used by the commission to evaluate relator's PTD application. According to relator, if Dr. Koppenhoefer did not intend that his report be used by the commission for a PTD adjudication, it cannot be so used. Relator's argument is seriously flawed and lacking in merit.
 {¶ 37} Relator, in effect, argues that Dr. Koppenhoefer's report cannot constitute some evidence upon which the commission can rely in a PTD adjudication unless it is clear from the report that the physician intended that the report be used for that purpose. Relator cites to no authority in support of such proposition because there is no authority supporting such proposition.
 {¶ 38} Clearly, Dr. Koppenhoefer opined on matters pertaining to the PTD adjudication. Dr. Koppenhoefer opined that, based upon his examination, he found relator "capable of doing sedentary work activities" with limitations regarding "repetitive movement of the right wrist and repetitive gripping and grasping activities." Dr. Koppenhoefer completed a physical strength rating form which indicates that relator has capacity for sedentary work. Given that Dr. Koppenhoefer opined on matters relevant to the PTD adjudication, the commission was well within its discretion to rely upon Dr. Koppenhoefer's report.
 {¶ 39} Moreover, the SHO adequately explained why she rejected relator's administrative challenge to Dr. Koppenhoefer's report.
 {¶ 40} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.