DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Lyle Fenner, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying his application for permanent total disability ("PTD") compensation and to issue a new order granting him said compensation; alternatively, relator requests that this court compel the commission to enter an order complying with State exrel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 2} The matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In her decision, the magistrate recommended that this court deny the requested writ of mandamus. Relator has filed objections to the magistrate's decision, and the matter is now before this court for a full, independent review.
 {¶ 3} According to relator, his objections raise issues that were raised before the magistrate but were not addressed by the magistrate in her decision. Relator has stated these issues, which form the bases of relator's objections, to be as follows:
1) The Commission relied upon the report of Dr. Lutz to find Relator capable of sedentary work despite the fact that the contradiction between Lutz's demonstrable findings and his sedentary work assertion is such that Lutz's report cannot be considered "some evidence" under the law.
2) In violation of State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203, the Commission's order asserts that Relator is capable of sedentary work without citing, as the law requires, how this finding is supported by demonstrable evidence from the medical record, and without mentioning numerous restrictions uncontradicted in the medical record which would limit Relator significantly more than would the general sedentary work capability asserted in the Commission's order.
3) In violation of Noll and State ex rel. Stephenson v.Indus. Comm. (1987), 31 Ohio St.3d 167, 171, the Commission's order evaluates Relator's nonmedical profile based on its correlation with the general definition of sedentary work despite the fact that all medical evidence supports restrictions related to Relator's allowed conditions which would eliminate most if not all jobs within the sedentary range.
 {¶ 4} By his first objection to the magistrate's decision, relator asserts that Dr. James T. Lutz's report, and any conclusions reached therein, cannot be considered "some evidence" upon which the commission could properly rely. We observe that the magistrate addressed relator's argument that Dr. Lutz's report is fatally flawed. The magistrate concluded that, although "further explanations on certain points would be helpful," the medical report was still "some evidence" on which the commission could properly rely. (Appendix at ¶ 25.) Also, the magistrate discussed Dr. Lutz's use of an exertion-levels checklist, and concluded that it did not constitute "a defect that bars the report from evidentiary consideration." (Appendix at ¶ 26.) We agree with the magistrate's resolution of these issues.
 {¶ 5} Furthermore, we observe that relator argues that Dr. Lutz's report is internally inconsistent. Relator argues that "the findings demonstrated in the body of his report cannot be reconciled with the opinion that Relator is capable of a full range of sedentary work." (Relator's brief, at 3.) Although Dr. Lutz's report indicated relator's ability to perform sedentary work, the report also "clarified that claimant had specific physical limitations and capacities related to his allowed conditions." (Appendix at ¶ 27.)
 {¶ 6} We do not find that Dr. Lutz's findings are incompatible with his conclusion that relator is capable of performing sedentary work, such as to render the commission's reliance on said report as an abuse of discretion. Relator's arguments to the contrary, we conclude that the magistrate properly determined that Dr. Lutz's report is "some evidence" upon which the commission could rely.
 {¶ 7} In his second objection to the magistrate's decision, relator argues that the commission violated Noll because it cited "no evidence on the face of its order to support its assertion that Relator is capable of sedentary work." (Relator's brief, at 2.) Also, relator argues that the commission erred by not mentioning the restrictions indicated in the record regarding relator's sedentary work capabilities.
 {¶ 8} We agree with the magistrate's conclusion that the "commission cited some evidence with respect to its determination of medical capacity and provided a brief explanation in compliance with Noll." (Appendix at ¶ 28.) The commission order denying PTD states, "The Staff Hearing Officer finds that the claimant would [be] able to engage in sedentary work activity within the restrictions and abilities noted by Dr. Lutz in his September 4, 2001 report." Relator's arguments to the contrary, we agree with the magistrate's conclusion that the "commission recognized that claimant's medical capacity was not simply coextensive with the entire `sedentary' category but that claimant's medical capacity involved particular capacities and restrictions that were specific to his allowed conditions." (Appendix at ¶ 28.) Therefore, the arguments raised in relator's second objection to the magistrate's decision are without merit.
 {¶ 9} In his third objection to the magistrate's decision, relator asserts that the commission abused its discretion underNoll and State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167, when it considered relator's nonmedical profile in its PTD determination. According to relator, the commission abused its discretion by not analyzing relator's nonmedical profile within the parameters of relator's physical restrictions. As discussed above, the commission stated in its finding that relator has the capacity to perform sedentary work "within the restrictions and abilities noted" in Dr. Lutz's report. We conclude that relator's argument concerning the commission's analysis of his nonmedical profile in relation to his ability to perform sedentary work is without merit.
 {¶ 10} Upon our independent review of the record, as well as our examination of the magistrate's decision, we overrule relator's objections to the magistrate's decision. Pursuant to Civ.R. 53(E)(4)(b), we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we hereby deny the requested writ of mandamus.
Objections overruled; writ denied.
 Lazarus, P.J., and Brown, J., concur. APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Lyle Fenner, : Relator, : v. : No. 03AP-412 Industrial Commission of Ohio and : (REGULAR CALENDAR) Siemans Energy Automation : Motors Drives Division, : Respondents. :
 MAGISTRATE'S DECISION Rendered on October 9, 2003 Harris Burgin, L.P.A., and Andrea L. Burns, for relator.
Jim Petro, Attorney General, and Kevin J. Reis, for respondent Industrial Commission of Ohio.
Buckingham, Doolittle Burroughs, LLP, and Richard H.Hernandez, for respondent Siemans Energy Automation Motors 
Drives Division.
 IN MANDAMUS {¶ 11} In this original action in mandamus, relator, Lyle Fenner, asks the court to issue a writ compelling respondent Industrial Commission of Ohio ("commission") to vacate its order denying compensation for permanent total disability ("PTD") and to issue a new order granting the requested compensation or, in the alternative, an order complying with State ex rel. Noll v.Indus. Comm. (1991), 57 Ohio St.3d 203, and State ex rel.Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167.
 {¶ 12} Findings of Fact:
 {¶ 13} 1. In 1990, Lyle Fenner ("claimant") sustained an industrial injury and his workers' compensation claim was allowed for a muscle strain of the left shoulder and neck, a herniated disc at C6-7, a herniated disc at L5-S1 with radiculopathy, and a left rotator cuff tear. Claimant had surgeries to treat the allowed conditions.
 {¶ 14} 2. In June 2001, claimant applied for PTD compensation. He reported that he graduated from high school and could read, write and do basic math. He further reported that he could read blueprints and wire schematics and run tests on motors. Claimant also stated that he has been a foreman supervising 50 people at one time.
 {¶ 15} 3. In September 2001, claimant was examined on behalf of the commission by James T. Lutz, M.D., who recited the medical history of the allowed conditions and reported claimant's descriptions of pain. With regard to his clinical findings, Dr. Lutz stated that manual muscle testing was "excellent." However, the ranges of motion for the left shoulder were as follows: flexion to 170 degrees, extension to 50 degrees, abduction to 170 degrees, adduction to 40 degrees, external rotation to 80 degrees, and internal rotation to 70 degrees.
 {¶ 16} Examination of the low back revealed a mild loss of the lordotic curvature and a level pelvis. Dr. Lutz found tenderness of the lumbosacral spine but no evidence of spasm. Claimant was able to perform straight-leg raising in both sitting and supine positions, but elevation of the legs caused pain. The following ranges of motion were observed for the back: flexion at 20 degrees, extension at 15 degrees, right lateral flexion at 15 degrees, and left lateral flexion at 15 degrees. Claimant was able to heel-walk and toe-walk with mild difficulty but was unable to do a full squat.
 {¶ 17} Dr. Lutz concluded that claimant had reached maximum medical improve-ment, and he estimated a 48 percent impairment of the whole person. On a separate form, which listed the various categories of work with definitions, Dr. Lutz indicated that claimant was physically capable of "sedentary" work.
 {¶ 18} 4. In October 2001, an employability assessment was provided by Christy Vogelsang, who noted that claimant's age was a negative factor because it was closely approaching normal retirement age. However, she found that the high school diploma and claimant's training in the service as a military policeman were positive educational factors. Ms. Vogelsang concluded that claimant's work history was a positive factor because claimant had learned skills such as blueprint reading and had supervised other workers.
 {¶ 19} Ms. Vogelsang concluded that claimant exceeded the educational requirements for entry-level sedentary work due to his technical skills and supervisory experience. In addition, she noted claimant's report that he could still go hunting occasionally, drive his car, do grocery shopping, mow his grass, and walk to neighboring houses. Based on her vocational assessment, Ms. Vogelsang concluded among other things that, if the medical report of Dr. Lutz were adopted, claimant could work as a dispatcher, scheduler, order clerk, grading clerk, and other jobs.
 {¶ 20} 5. In September 2002, the PTD application was heard by a staff hearing officer ("SHO"), who concluded that the allowed conditions prevented claimant from returning to his former work. However, the SHO concluded that claimant was medically capable of "sedentary work activity within the restrictions and abilities noted by Dr. Lutz in his September 04, 2001 report."
 {¶ 21} 6. With respect to the nonmedical factors, the SHO described the report of Ms. Vogelsang as follows:
* * * Ms. Vogelsang found that the claimant's age of 64 was a negative factor but that the claimant's twelfth grade education was a positive factor. The vocational expert found that the claimant's work history was a positive factor as the claimant has had forty-four years of experience with the same employer and held a number of positions which required blueprint reading, serving as a for[e]man and supervising others.
The vocational expert found that the claimant had reasoning and language skills at the high school level and mathematical skills at the algebra level.
The vocational [expert] found that the claimant had average ability with regard to general learning ability, verbal, numerical and spacial aptitude as well as form perception, motor coordination and finger and manual dexterity.
The vocational expert found based upon the report of Dr. Lutz that the claimant could work as an order clerk, skip tracer, reviewer, grading clerk, dispatcher or scheduler.
 {¶ 22} The SHO then analyzed the nonmedical factors and concluded that claimant was not permanently and totally disabled:
The Staff Hearing Officer finds that the claimant is sixty-five years of age and is classified as a person of closely approaching advanced age. The Staff Hearing Officer finds that although the claimant's age is [a] negative factor the obstacles posed by the claimant's age are overcome by the claimant's work history and vocational skills which he obtained on the job.
The Staff Hearing Officer find[s] that the claimant has a twelfth grade education and has no difficulty with reading, writing or basic math. The Staff Hearing Officer finds that the claimant's educational level also included technical training in supervisory management as well as brazer qualification. The Staff Hearing Officer finds that the claimant's twelfth grade education and additional technical training are positive factors with regard to the claimant's ability to engage in other types of sedentary employment activity.
The Staff Hearing Officer finds that the claimant's past work history has involved working as a traction motor assembler which involved producing and putting together motors. This required the claimant to have a great deal of technical knowledge with regard to the working of motors and required the claimant to have knowledge of the mechanical and electrical workings of a motor. This position required the claimant to be able to read blueprints and electrical drawings and to know the various dimensions and parts of a motor.
The claimant also was required to engage in supervisory activity and at one time supervised approximately fifty people and was responsible for assigning jobs to other individuals. This job also required the claimant to complete a good deal of paperwork.
The employer's human resources manager Mr. Hoover testified that the claimant was a valued employee and was considered an expert in the production of traction motors. The claimant was considered a lead man on the technical aspects of motor assembly and also helped others on the job who needed assistance with motor assembly. The claimant was so valuable to the employer that he became known as a trouble shooter and was sent out by the company to customer's job sites in order to work on motors.
The Staff Hearing Officer finds that the claimant's past work history indicates that the claimant is an intelligent individual who is readily able to acquire information through on the job training or other type of skills enhancement. The claimant has had supervisory skills and is able to assimilate technical information and is able to put the knowledge to practical use.
The Staff Hearing Officer further finds that the claimant's past work history demonstrates intelligence and sophistication on the claimant's part which would indicate that the claimant would be able to engage in retraining which may be necessary to engage in other types of entry level sedentary work activity.
Although the claimant is sixty-five years of age, the claimant's strong past work history and educational achievement as well as additional technical training indicate that the claimant is able to engage in sustained remunerative work activity and is not permanently and totally disabled.
 {¶ 23} Conclusions of Law:
 {¶ 24} Claimant contends that the commission abused its discretion in two ways. First, claimant argues that the report of Dr. Lutz must be removed from evidentiary consideration as a matter of law and that the commission's reliance on that report was, accordingly, an abuse of discretion. Second, claimant asserts that the commission failed to provide an adequate explanation of its reasoning as required by Noll andStephenson.
 {¶ 25} With respect to the first issue, the magistrate finds no fatal flaw in Dr. Lutz's report. While further explanations on certain points would be helpful — such as a recitation of the normal ranges of motion so that one could easily compare claimant's ranges of motion, to determine the extent of his limitations — the lack of such information in a narrative medical report does not render it incapable of constituting "some evidence" on which the commission may rely. In addition, Dr. Lutz's recitation of claimant's symptoms and pain was set forth as part of his report of claimant's complaints, not as part of his medical findings. Thus, his conclusions do not contradict his findings.
 {¶ 26} Claimant also asserts that Dr. Lutz's use of a checklist form to set forth the exertional category rendered his opinion defective, requiring the court to remove the medical opinion from evidentiary consideration as a matter of law. Although the magistrate agrees that a detailed recitation of physical restrictions and capacities is desirable (regardless of whether the report is submitted by the commission's expert or the claimant's expert), the magistrate is not aware of authority to support the conclusion that a doctor's use of an exertional-levels checklist, to opine that a claimant is limited to sedentary work, constitutes a defect that bars the report from evidentiary consideration.
 {¶ 27} The form in question included a description of each exertional level. Further, Dr. Lutz's narrative report clarified that claimant had specific physical limitations and capacities related to his allowed conditions, such as mild difficulty rising from a seated position, the ability to walk albeit with a slightly stiffened gait, an inability to perform a full squat, the ability to use the left upper extremity within specific ranges of motion for the left shoulder, no limitations of use of the right upper extremity, and limited spinal motion. In sum, the magistrate concludes that claimant has not met his burden of proving that Dr. Lutz's report must be barred from evidentiary consideration as a matter of law.
 {¶ 28} Next, the magistrate considers whether the commission's discussion of its reasoning satisfied the requirements articulated in Stephenson and Noll. In its order, the commission discussed both the medical and nonmedical factors. In setting forth its determination of medical capacity, the commission did not state merely that the claimant could perform "sedentary work." Rather, the commission found that claimant could perform "sedentary work activity within the restrictions and abilities noted by Dr. Lutz in his September 04, 2001 report." Thus, the commission recognized that claimant's medical capacity was not simply coextensive with the entire "sedentary" category but that claimant's medical capacity involved particular capacities and restrictions that were specific to his allowed conditions. The magistrate concludes that the commission cited some evidence with respect to its determination of medical capacity and provided a brief explanation in compliance with Noll, supra. In sum, claimant has not proven an abuse of discretion by the commission with regard to its determination of medical capacity.
 {¶ 29} In addition, the magistrate notes that the Ohio Supreme Court has settled that the commission may conclude that a claimant can perform sustained remunerative employment even when the claimant cannot perform a full range of sedentary work.State ex rel. Wood v. Indus. Comm. (1997), 78 Ohio St.3d 414,418. PTD compensation may be denied when there is evidence that the claimant can perform some kind of work, however limited. Id.; see, also, State ex rel. Roy v. Indus. Comm. (1998),83 Ohio St.3d 199, 203.
 {¶ 30} Next, the commission discussed claimant's nonmedical factors of age, education, and work history. The commission concluded that, although claimant's age was a negative factor, it was outweighed by the positive factors of education and an excellent work history. The magistrate concludes that the commission's weighing of these factors was within its discretion as the finder of fact. See, e.g., State ex rel. Moss v. Indus.Comm. (1996), 75 Ohio St.3d 414 (upholding denial of PTD where 78-year-old claimant had eighth-grade education, history of work as housekeeper, and extensive medical limitations from her allowed conditions); State ex rel. King v. Trimble (1996),77 Ohio St.3d 58, 63 (stating that, although the evidence was "not particularly compelling to us," the court would not substitute its judgment for the commission's). The commission explained at length why it viewed the work history and the education as positive factors, and the commission's interpretation was within its discretion regarding these factors. See, e.g., State ex rel.Ellis v. McGraw Edison Co. (1993), 66 Ohio St.3d 92 (concluding that the commission may view possession of a high school diploma as an asset even where the claimant's test results show abilities at the grade-school level); State ex rel. Ewart v. Indus. Comm.
(1996), 76 Ohio St.3d 139 (explaining the broad discretion the commission has, as the finder of fact, to interpret a work history as positive or negative).
 {¶ 31} The court's role in mandamus is limited. Where the commission has cited some evidence in support of its decision and provided a brief explanation of its rationale, the court does not disturb the commission's decision despite the existence of other evidence, greater in quantity and quality, supporting the contrary result. State ex rel. Pass v. C.S.qT. Extraction Co.
(1996), 74 Ohio St.3d 373; Noll, supra. In the present action, the commission was within its discretion to conclude that claimant had the medical capacity and the vocational capacity to perform some type of sedentary work. Accordingly, the magistrate recommends that the court deny the requested writ of mandamus.
 /s/ P.A. Davidson
P.A. DAVIDSON MAGISTRATE