DECISION ON OBJECTIONS TO MAGISTRATE'S DECISION
{¶ 1} Relator, Gary W. Tharp, commenced this original action requesting a writ of mandamus that orders respondent Industrial Commission of Ohio to vacate its order denying him permanent total disability compensation, and to enter an order granting said compensation.
 {¶ 2} Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In his decision, the magistrate concluded that the reports of Dr. Lutz and Mr. Houck constitute some evidence upon which the commission could rely, and the commission did not abuse its discretion in analyzing the non-medical factors. Accordingly, the magistrate determined the requested writ of mandamus should be denied.
 {¶ 3} Relator filed objections to the magistrate's conclusions of law, as follows:
I. The Magistrate erred in relying exclusively on a physical" strength" check mark where the opining physician expressly incorporated his narrative report, which references additional restrictions which are consistent with detailed reports of physical restrictions, capacities, and pain which are also of record.
II. The Magistrate erred in not addressing the Claimant's contention that a vocational review does not constitute some evidence of PTD denial when the vocational reviewer does not consider record evidence concerning the Claimant's inability to complete rehabilitation, therapy, GED coursework, documented return to work failures, inability to sustain a job search, and does not accurately reflect evidence concerning the injured claimant's previous work activity.
III. Claimant objects to the Magistrate's conclusion that the Industrial Commission gave proper consideration and analysis to non-medical disability factors. In the case at bar, Mr. Tharp's age, education, and academic level are negative vocational barriers. No skills have been identified from the claimant's prior work activity. Hence, pursuant to State ex rel. Rothkegal v. Westlake (2000), 88 Ohio St.3d 409
and State ex rel. Blue v. Indus. Comm. (1997), 79 Ohio St.3d 466 the Industrial Commission had a duty to consider the total effect of same since when "other vocational factors were all negative, further consideration of his age would be appropriate, since age could be outcome-determinative — the last straw that could compel a different result". Id. at 469-470 quoted with approval in Rothkegal, supra.
 {¶ 4} Relator's first objection contends the Industrial Commission should not have relied exclusively on the report of Dr. Lutz, as detailed assessments were presented to the commission through the report of other doctors. Nothing in the commission's decision suggests it failed to consider those other reports. Moreover, to the extent relator in effect requests that we reweigh the evidence and conclude the reports of other doctors are more persuasive than that of Dr. Lutz, we are precluded from such reweighing in mandamus proceedings.
 {¶ 5} Instead, as the magistrate properly notes, relator specifically estimated to Dr. Lutz that he could stand for 15 minutes at a time, walk for 20 minutes at a time and sit for 30 minutes at a time. Because nothing in the information relator provided to Dr. Lutz indicates he could sit only for a total of 30 minutes during a normal work day, Dr. Lutz's opinion that relator can perform sedentary work is not inconsistent with the information relator supplied to Dr. Lutz. In addition, Dr. Lutz examined relator. To suggest Dr. Lutz's conclusion about relator's ability to work rests solely on relator's statements, however reliable Dr. Lutz may have found them, ignores the function of the Dr. Lutz's physical examination of relator. Relator's first objection is overruled.
 {¶ 6} Relator's second objection takes issue with Mr. Houck's vocational report, asserting Mr. Houck failed to consider other record evidence. Relator again seems to be suggesting the commission should not have relied on the evidence it noted, but should have relied on other evidence in the record. Relator presumably presented to the commission the deficiencies he points out in the report of Mr. Houck, and the commission could consider those contentions in its review of Mr. Houck's report. The commission apparently determined the alleged deficiencies did not render Mr. Houck's conclusions unsupported. Indeed, regardless of relator's failed rehabilitation efforts or unsuccessful attempts to obtain a GED, Mr. Houck listed, based on the medical report of Dr. Lutz, a number of jobs relator could perform without any training. In light of all of those considerations, we cannot say the Industrial Commission abused its discretion in relying on the report of Mr. Houck. Relator's second objection is overruled.
 {¶ 7} Relator's third objection contends the Industrial Commission improperly analyzed the non-medical factors. In particular, relator disputes the commission's conclusion that relator's ability to work in the past is evidence of his continuing ability to work. The commission, however, did not so state. Rather, the commission determined that because relator's intellectual functioning allowed him to perform semi-skilled jobs in the past, that same intellectual capacity would allow him to perform unskilled jobs typically found in sedentary work. Relator's tenth grade education allows the commission to reasonably reach that conclusion. Relator's third objection is overruled.
 {¶ 8} Following independent review pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled; writ denied.
Petree and Sadler, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Gary W. Tharp, :
 Relator, :
v. : No. 04AP-1190
Industrial Commission of Ohio : (REGULAR CALENDAR)
and P.R. Sussman Company, :
 Respondents. :

MAGISTRATE'S DECISION
Rendered on May 31, 2005
James R. Nein, Charles J. Smith and Brian W. Harter, for relator.
Jim Petro, Attorney General, and Shawn M. Wollam, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 9} In this original action, relator, Gary W. Tharp, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him permanent total disability ("PTD") compensation, and to enter an order granting said compensation.
Findings of Fact:
 {¶ 10} 1. On March 25, 1999, relator sustained an industrial injury while employed as a pipe insulator for a state-fund employer, the P.R. Sussman Company. The industrial claim is allowed for "abrasion right leg; sprain lumbar region; sprain right shoulder nos; aggravation of pre-existing degenerative disc disease low back; right triceps muscle strain," and is assigned claim number 99-358671.
 {¶ 11} 2. On July 17, 2003, relator filed an application for PTD compensation.
 {¶ 12} 3. On November 4, 2003, relator was examined, at the commission's request, by James T. Lutz, M.D., who is board certified in occupational medicine. In his narrative report, Dr. Lutz wrote:
History: Is presented by the claimant who appeared reliable.
CHIEF COMPLAINT: Low back pain.
HISTORY OF PRESENT ILLNESS: Gary Tharp is a 52-year-old male who was injured on 3/25/99 while working as a pipe insulator. On the date of injury the claimant was on a scaffolding when a board broke loose and he fell through the hole scraping his right shin on a 2 x 4 board. He underwent no surgical procedures related to this injury. Currently he is under the care of a pain management specialist, Dr. Templin, whom he sees approximately every three months. His current medications related to the injury include Lortab, methadone, Celebrex, Skelaxin, and Topamax. His current symptoms include constant low back pain, which he rates from 8-10 on the Visual Analog Scale, with intermittent radiation of pain into the upper thoracic region, and intermittent radiation of pain down the right leg to the mid-calf area. He also complains of intermittent tingling down both legs to the toes. His low back symptoms are aggravated with all types of exertional activities such as lifting, bending, pushing and pulling, prolonged sitting and standing, and with weather changes. Regarding his right shoulder: The claimant complains of intermittent, but daily pain without radiation of pain. He also describes intermittent numbness and tingling of both hands, which is most likely related to his neck rather than his right shoulder. He has no complaints related to the abrasion of his right leg or to his right triceps muscle strain.
Regarding his activities of daily living: The claimant lives alone in his own home. He states he spends much of the day sitting in a recliner watching television or lying in bed. He does essentially no general household chores such as cleaning and laundry, as this is done by either his mother or girlfriend. He does drive and does do light shopping, and takes out his own garbage, which he says is not much. He estimates he can stand for 15 minutes at a time, walk for 20 minutes at a time, and sit for 30 minutes at a time.
* * *
In my medical opinion, this claimant has reached maximum medical improvement with regard to each specified allowed condition of the injury of record. In my opinion, no funda-mental, functional or physiologic change can be expected despite continued treatment and/or rehabilitation.
Reference is made to the Fourth Edition of the AMA Guides Revised in arriving at the following impairment assessment. For abrasion right leg and right triceps muscle strain: The claimant warrants a 0% impairment. For injures to the lumbo-sacral spine including sprain lumbar region, and aggravation of preexisting degenerative disc disease low back, with evidence of radiculopathy: Utilizing table 72 on page 110 the claimant warrants a DRE category III, which equals a 10% whole person impairment. For sprain right shoulder: For range of motion, neurosensory, neuromotor and specific disorders: The claimant warrants a 0% impairment. I will allow a 1% whole person impairment for the claimant's ongoing pain. Combining 10+1 the claimant warrants an 11% whole person impairment.
Please see the enclosed physical strength rating.
 {¶ 13} 4. On November 4, 2003, Dr. Lutz completed a "Physical Strength Rating" form. The form asks the examining physician to mark the type of physical work activity the claimant is capable of performing. Dr. Lutz marked that relator can perform "sedentary work." The form contains the following preprinted preface instructing the physician:
My opinion of this injured worker's physical strength is indicated below and is based solely on the allowed condition(s) that falls within my specialty. The medical evidence supporting this opinion is presented in the narrative portion of my report. The injured worker's age, education, and work history are not considered in this estimate.
 {¶ 14} 5. The commission requested an employability assessment report from James H. Houck, a vocational expert. The Houck report, dated December 10, 2003, responds to the following query:
Based on your separate consideration of reviewed medical and psychological opinions regarding functional limitations that arise from the allowed condition(s), identify occupations that the claimant may reasonably be expected to perform, (A) immediately and/or, (B) following appropriate remedial education or brief skill training.
Indicating acceptance of Dr. Lutz's opinion that relator can perform sedentary work and responding to the above query, Houck listed the following employment options:
* * * Examiner; Washroom Operator; Carding-Machine Operator; Grinding-Machine Operator, Automatic; Toggle-Press Folder-And-Feeder; Press Operator, Pierce and Shave.
Under "III. Effects of Other Employability Factors," Houck wrote:
1. Question: How, if at all, do the claimant's age, education, work history or other factors (physical[,] psychological and sociological) affect his/her ability to meet basic demands of entry-level occupations?
Answer: Age: 52. At this age, he should retain the ability to learn new skills and adapt to new environments. I would not consider his age to be a barrier to re-employment.
Education: 10th grade, no GED. This level of education should be sufficient for entry-level unskilled and semi-skilled tasks. It should not be considered a barrier to re-employment.
Work History: This injured worker's work history was primarily semi-skilled in nature. I would not consider his work history to be a barrier to re-employment.
2. Question: Does your review of background data indicate whether the claimant may reasonably develop academic or other skills required to perform entry-level Sedentary or Light jobs?
Answer: There is nothing to indicate that the claimant could not benefit from a structured vocational rehabilitation program designed at skill enhancement and re-employment.
Under "IV. Employability Assessment Database," Houck wrote:
B. WORK HISTORY
 Job Title DOT Code Skill Level Strength Dates
 Insulator 759.684-050 Semi-Skilled Medium 1999
 Insulator 759.684-050 Semi-Skilled Medium 1978-1992
 Insulator 759.684-050 Semi-Skilled Medium 1967-1978

C. EDUCATIONAL HISTORY
 Highest grade completed: 10th grade
 Date of last attendance: 1967
 H.S. graduate: No
 GED: No
 Vocational Training: N/A
 ICO educational classification: Limited Education
 {¶ 15} 6. Following a June 31, 2004 hearing, a staff hearing officer ("SHO") issued an order denying the PTD application. The SHO's order states:
All of the relevant medical and vocational reports on file were reviewed and considered in arriving at this decision. This order is based upon the reports of Dr. Lutz and Mr. Houck. The injury that is recognized in this claim occurred on 03/25/1999 while the injured worker was employed as a pipe insulator. The injury occurred when a board on scaffolding came loose and the injured worker fell. The injured worker's treatment in this claim has been conservative with no surgical treatment. The injured worker last worked in June of 2000. The injured worker enrolled in a rehabilitation program but did not complete it. The rehabilitation program was closed because the injured worker was not making any progress.
Dr. James Lutz, Occupational Medicine, examined the injured worker on 11/04/2003 at the request of the Industrial Commission. The inured worker advised Dr. Lutz that he sees his physician approximately every three months and is treated with pain medication. To Dr. Lutz the injured worker com-plained of constant low back pain with intermittent radiation of pain into the thoracic region and down the right leg. The injured worker advised that his symptoms are aggravated with exertional activities. Regarding the activities of daily living the injured worker advised that he is able to drive, do light shopping and take out his own garbage. The injured worker further advised that household chores such as cleaning and laundry are performed by either his mother or his girlfriend. Dr. Lutz's examination findings are contained in his report. Dr. Lutz opined that the injured worker's condition has reached maximum medical improvement. On the Physical Strength Ratings Form that is attached to his report Dr. Lutz indicated that the injured worker is capable of physical work activity that is sedentary in nature.
The Staff Hearing Officer finds that the injured worker's condition has reached maximum medical improvement for each of the conditions that are recognized in this claim. The Staff Hearing Officer further finds, based upon the report of Dr. Lutz, that the injured worker retains the physical functional capacity to perform employment activities which are sedentary in nature.
Mr. James Houck prepared an Employability Assessment Report for the Industrial Commission that is dated 12/10/2003. Mr. Houck advised that if he accepted the residual functional capacities opinions of Dr. Lutz the injured worker could perform the following jobs immediately: examiner; washroom operator; carting machine operator; grinding machine operator; toggle-press folder-and-feeder and press operator pierce and shave. Mr. Houck further advised that the injured worker's age should not interfere with the injured worker's ability to learn new skills and adapt to new environments. He further advised that the injured worker's tenth grade education should be sufficient for entry-level unskilled and semiskilled tasks. He further advised that the injured worker's work history would not be a barrier to re-employment. Mr. Houck advised that there is no bases for finding that the injured worker could not benefit from a structured vocational rehabilitation program designed at skill enhancement and re-employment. Mr. Houck characterized the injured worker's work history as having involved semiskilled skill level and medium strength level activities. He further advised that in his work history the injured worker has demonstrated seventh to eight grade reasoning, first to third grade math and fourth to sixth grade language skills. He further advised that the injured worker had demonstrated many average aptitudes in his work history.
The Staff Hearing Officer finds that the injured worker is 53 years of age with a tenth grade education. The Staff Hearing Officer further finds that the injured worker has a work history which includes employment only as a pipe insulator. The Staff Hearing Officer further finds that the injured worker was a member of a union. The Staff Hearing Officer further finds that the injured worker is able to read, write, and perform basic math, but not well.
The Staff Hearing Officer finds that the injured worker's age of 53 years is a very mild barrier to the injured worker with regard to his ability to return to and compete in the work force. The Staff Hearing Officer further finds, however, that age is never a factor which prevents a person from returning to work. The Staff Hearing Officer further finds that the injured worker's level of education and academic skills are a mild barrier to the injured worker with regard to his ability to return to the work force. The Staff Hearing Officer further finds, however, that the injured worker has never had greater academic skills and the injured worker's level of education has not prevented the injured worker from working in the past. The Staff Hearing Officer further finds that the injured worker's academic skills not only have not prevented the injured worker from working, they have not prevented the injured worker from performing semiskilled employment. The Staff Hearing Officer further finds that the fact that the injured worker has performed semiskilled employment in the past is evidence that the injured worker possesses the intellectual capacity to perform employment activities that are at least unskilled in the future. Based upon the report of Mr. Houck the Staff Hearing Officer finds that there is no basis for determining that the injured worker could not benefit from on the job training. The Staff Hearing Officer further finds, based upon the report of Mr. Houck, that the injured worker's education should be sufficient for the performance of many unskilled entry level sedentary jobs. Based upon the report of Mr. Houck the Staff Hearing Officer finds that the injured worker could perform the following jobs immediately: examiner; washroom operator; carting machine operator; grinding machine operator, automatic; toggle-press folder-and-feeder; and press operator, pierce and shave. The Staff Hearing Officer therefore finds that the injured worker is capable of sustained remunerative employment and is not permanently and totally disabled. The injured worker's Application for Permanent and Total Disability, filed 07/17/2003, is therefore denied.
 {¶ 16} 7. On November 3, 2004, relator, Gary W. Tharp, filed this mandamus action.
Conclusions of Law:
 {¶ 17} Three issues are presented: (1) whether the report of Dr. Lutz is some evidence upon which the commission can rely; (2) whether the report of Mr. Houck is some evidence upon which the commission can rely; and (3) whether the commission abused its discretion in analyzing the nonmedical factors.
 {¶ 18} Finding that the reports of Dr. Lutz and Mr. Houck constitute some evidence upon which the commission can rely and that the commission did not abuse its discretion in analyzing the nonmedical factors, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 19} Citing State ex rel. Fenner v. Indus. Comm., Franklin App. No. 03AP-412, 2004-Ohio-4648, relator challenges the commission's reliance upon Dr. Lutz's opinion, expressed on the "Physical Strength Rating" form, that relator is capable of performing sedentary work. Essentially, relator claims that Dr. Lutz's mark by the "sedentary work" definition on the physical strength rating form is not supported by his narrative report. Relator argues:
* * * [I]f one goes beyond the check mark strength rating and considers the history, daily activities, and objective and subjective findings in Dr. Lutz's report, a conclusion * * * is reached that Mr. Tharp lacks the capacity to perform some physical activities required by sedentary employment.
(Relator's brief, at 5.)
 {¶ 20} Relator argues that Dr. Lutz's sedentary work opinion is inconsistent with Dr. Lutz's reporting of relator's history and complaints and relator's description of his ability to perform activities of daily living.
 {¶ 21} For example, relator specifically points out that he estimated to Dr. Lutz that he "can stand for 15 minutes at a time, walk for 20 minutes at a time, and sit for 30 minutes at a time." According to relator, his own estimates of his abilities for standing, walking, and sitting are inconsistent with Dr. Lutz's "sedentary work" opinion. The magistrate disagrees.
 {¶ 22} Ohio Adm. Code 4121-3-34(B)(2)(a) states:
"Sedentary work" means exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull, or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.
 {¶ 23} By relator's own account, as recorded by Dr. Lutz, he can "sit for 30 minutes at a time." According to relator, because sedentary work, by definition, involves sitting most of the time, by his own account he cannot perform sedentary work. The magistrate disagrees.
 {¶ 24} Relator did not tell Dr. Lutz that he could only sit for a total of 30 minutes during a normal workday. What relator told Dr. Lutz was that he can "sit for 30 minutes at a time." Relator's own account, as recorded by Dr. Lutz, does not limit the number of times during a normal workday that relator can sit for 30 minutes.
 {¶ 25} Thus, even if it could be argued that Dr. Lutz accepted relator's own account of his capabilities for standing, walking and sitting, there is no inconsistency with Dr. Lutz's sedentary work opinion because relator never limited the number of 30 minute periods that he can sit during a normal workday.
 {¶ 26} Relator's reliance on Fenner is misplaced. In Fenner, the commission relied upon a report from Dr. Lutz who, as in the instant case, had completed a so-called "exertion — levels checklist" indicating that the claimant, Lyle Fenner, was capable of performing sedentary work. In Fenner, the commission had denied the claimant's PTD application relying on Dr. Lutz's report. As in the instant case, Fenner challenged Dr. Lutz's report on grounds that the doctor's narrative findings were inconsistent or incompatible with his sedentary work opinion.
 {¶ 27} In Fenner, this court reviewed Dr. Lutz's findings contained in his narrative report and found that they were not inconsistent or incompatible with the sedentary work opinion. Thus, this court's review of Dr. Lutz's report in Fenner was fact-specific.
 {¶ 28} It is not clear to this magistrate why relator relies onFenner to support his claim that Dr. Lutz's report in the instant case is fatally flawed. Fenner does not pronounce new law or even clarify old law. Fenner simply applies well-settled law to the specific facts of that case. While the same doctor is involved in the Fenner case as in this case, and there are similar kinds of challenges to the relied-upon medical report, the Fenner case does not compel this court to eliminate Dr. Lutz's report from evidentiary consideration. In short, relator's reliance on Fenner is misplaced.
 {¶ 29} As previously noted, the second issue is whether the Houck report constitutes some evidence upon which the commission can rely.
 {¶ 30} According to relator, Houck incorrectly determined the Dictionary of Occupational Titles ("DOT") code applicable to the job that relator was performing in 1999 when he was injured. According to relator, his DOT code should not be listed as 759.684-050 as Houck reported but should instead be listed as either 863.364-014 or 869.664-014. (Relator's brief, at 12-13.)
 {¶ 31} According to relator, DOT code 863.364-014 identifies "insulation worker (construction)" which involves medium strength exertion while DOT code 869.664-014 identifies "construction worker" which can involve heavy strength exertion. (See exhibits attached to relator's brief.) According to relator, DOT code 759.684-050 identifies a "rubber liner," "liner," or "rubber insulator," and involves medium strength exertion.
 {¶ 32} Relator's challenge to Houck's determination of the DOT code applicable to his former position of employment is not reviewable in this mandamus action.
 {¶ 33} In support of his claim that the Houck report is flawed for the alleged failure to determine the correct DOT code applicable to the former position of employment, relator attaches to his brief purported copies of pages from the DOT. The magistrate notes that the DOT pages are not contained in the stipulation of evidence and there is no evidence before this court that the DOT pages were ever submitted or referenced by relator at the administrative proceedings.
 {¶ 34} Now, in this action, relator inappropriately invites this court to, in effect, second-guess the commission's expert using sources outside the record. Issues not raised administratively are ordinarily not reviewable in mandamus. State ex rel. Quarto Mining Co. v. Foreman
(1997), 79 Ohio St.3d 78; State ex rel. Manning v. MVM Inc., Franklin App. No. 03AP-1287, 2005-Ohio-290.
 {¶ 35} Moreover, the magistrate notes that, on his PTD application, relator described the job he held in 1999 as "insulator." He also listed "insulator" for the jobs he held from 1978 to 1992. Thus, Houck's description of relator's job titles as "insulator" appears to be compatible with relator's PTD application. While the magistrate recognizes that this observation does not address the DOT challenge relator attempts to present here, it shows, nevertheless, that based solely upon the record before this court, there is no apparent flaw in Houck's presentation of the work history, including the skill level and strength level. Again, this court must not accept relator's invitation to criticize Houck's report based upon evidence that was never presented to the commission at the administrative proceedings.
 {¶ 36} As previously noted, relator also challenges the commission's analysis of the nonmedical factors.
 {¶ 37} The commission, through its SHO, found that relator's age of 53 is a "very mild barrier" to reemployment. The commission found that relator's tenth grade education and academic skills are a "mild barrier" to reemployment. The commission found that relator's work history of semi-skilled employment is evidence of an "intellectual capacity" to perform employment at least of an unskilled nature. Based on Houck's assessment, the commission found that relator could benefit from on-the-job training. The commission adopted Houck's listing of employment options.
 {¶ 38} Relator challenges the commission's determination that his work history demonstrates his intellectual capacity for at least unskilled employment. According to relator, the commission's determination simply ignores or "perfunctorily dismisses" his failure to complete high school, failure to obtain a GED, and his claim that he intellectually functions in the borderline range. (See Relator's brief, at 9.) The magistrate disagrees with relator's argument.
 {¶ 39} To begin, relator's claim that he functions intellectually in the borderline range is apparently premised upon a report from clinical psychologist Stuart A. Cooke, Ph.D., who examined relator on August 24, 2000, in connection with his application for social security disability benefits. Dr. Cook's report is contained in the stipulated record but was not mentioned in the commission's order nor Houck's report.
 {¶ 40} It was clearly within the commission's fact-finding discretion to determine that relator's work history demonstrated an intellectual capacity for employment at least at the unskilled level. The commission weighed the evidence of relator's semi-skilled work history with other nonmedical factors such as the grade of education obtained. The commission was not required to accept Dr. Cooke's report and to conclude that relator has no intellectual ability for work, as relator seems to suggest.
 {¶ 41} Moreover, it should be noted that a tenth grade education, by definition, is considered to be a "limited education" that does not preclude all sustained remunerative employment. Ohio Adm. Code4121-3-34(B)(3)(b)(iii) states:
"Limited education" means seventh grade level through eleventh grade level. Limited education means ability in reasoning, arithmetic and language skills but not enough to allow an injured worker with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. Generally, seventh grade through eleventh grade formal education is limited education.
 {¶ 42} Notwithstanding that relator has a tenth grade education and has never obtained a GED, it was within the commission's fact-finding discretion to conclude that relator's semi-skilled work history demonstrates an intellectual capacity that will permit unskilled employment.
 {¶ 43} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.